IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

HUY NGUYEN DINH VAN                                                                                  PLAINTIFF

v.                         Civil No. 2:12-cv-02019-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                      DEFENDANT

**MEMORANDUM OPINION**

I.   **Factual and Procedural Background**

Plaintiff, Huy Nguyen Dinh Van, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("the Act").

Plaintiff protectively filed his application on June 25, 2009, alleging disability as of June 8, 2009, due to paranoid schizophrenia. Tr. 10, 217. His date last insured was June 30, 2010. Tr. 12. On the alleged onset date, Plaintiff was twenty-two years old with a high school education and some college. Tr. 18, 222. He has past work as a service worker, stocker, cashier, assembly line worker, and janitor. Tr. 18.

Plaintiff's application was denied at the initial and reconsideration levels. Tr. 67-69, 71-72, 293-294. At Plaintiff's request, an administrative hearing was held on January 11, 2011. Tr. 20-41. The ALJ rendered an unfavorable decision on February 24, 2011. Tr. 7-19. Subsequently, the Appeals Council denied Plaintiff's Request for Review on December 23, 2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review

of that decision.

**II.     Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the

claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

### III. ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point from June 8, 2009, the alleged onset date, through June 30, 2010, his date last insured. Tr. 12. At step two, the ALJ found Plaintiff suffered from schizophrenic disorder, which was considered a severe impairment under the Act. Tr. 12. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 12-14.

At step four, the ALJ found Plaintiff had the RFC to perform a full range of work at all exertional levels, with the following limitations: Plaintiff can understand, remember, and carry out simple, routine, and repetitive tasks wherein the complexity of tasks is learned and performed by rote, respond appropriately to co-workers, usual work situations, and supervision that is simple, direct, and concrete, and can only have occasional contact with the general public. Tr. 14-18. Additionally, the ALJ determined Plaintiff could perform low stress work, which is defined as occasional decision-making and occasional changes in work place settings. Tr. 14-18.

With these limitations, the ALJ found Plaintiff could not perform his past relevant work. Tr. 18. However, after consulting a vocational expert, the ALJ found jobs existing in significant

numbers in the national economy that Plaintiff could perform.[1]  Accordingly, the ALJ determined Plaintiff was not under a disability from June 8, 2009, the alleged onset date, through June 30, 2010, the date last insured.  Tr. 19.

IV.    **Discussion**

On appeal, Plaintiff contends the ALJ erred by: (A) determining Plaintiff's impairments did not meet or equal a listed impairment; (B) improperly determining his RFC; and (C) posing an incomplete hypothetical question to the vocational expert.  *See* Pl.'s Br. 9-18.  For the following reasons, the court finds that substantial evidence supports the ALJ's determination.

A.  Listings

Plaintiff alleges his impairments meet or equal the requirements of Listing § 12.03 (schizophrenic, paranoid, or other psychotic disorders).  *See* Pl.'s Br. 9-12.  The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing.  *Johnson v. Barnhart,* 390 F.3d 1067, 1070 (8th Cir. 2004) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530-31, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990)).  To meet a listing, an impairment must meet all of the listing's specified criteria.  *Sullivan,* 493 U.S. at 530.  Medical equivalence must be based on medical findings.  20 C.F.R. § 416.926(b)(1)(ii) ("We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria."); *Sullivan,* 493 U.S. at 531 ("a claimant . . . must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment").

---

[1] The ALJ determined Plaintiff could perform the requirements of representative occupations such as industrial cleaner, of which there are 9,365 jobs in Arkansas and 1,049,956 jobs nationally, kitchen helper, of which there are 2,239 jobs in Arkansas and 274,945 jobs nationally, and cook helper, of which there are 1,318 jobs in Arkansas and 170,282 jobs nationally.  Tr. 19, 39-41.

The requirements of Listing §12.03 are as follows:

12.03 Schizophrenic, Paranoid and Other Psychotic Disorders: Characterized by the onset of psychotic features with deterioration from a previous level of functioning.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
1. Delusions or hallucinations; or
2. Catatonic or other grossly disorganized behavior; or
3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
a. Blunt affect; or
b. Flat affect; or
c. Inappropriate affect; or
4. Emotional withdrawal and/or isolation;

AND

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03.

There is no dispute that Plaintiff's schizophrenia satisfies the "A" criteria of the listing. However, Plaintiff contends his impairments also satisfy the "B" or "C" criteria of the listing. The ALJ determined Plaintiff's impairments did not satisfy the "B" criteria of the listing, as Plaintiff had only mild restriction of activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and one to two episodes of decompensation, each of extended duration. Tr. 12-13. Additionally the ALJ determined Plaintiff's impairments did not meet the "C" criteria of the listing. Tr. 12-13.

Substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet or equal Listing §12.03. Regarding activities of daily living, Plaintiff is capable of bathing, dressing, and grooming himself, preparing simple meals, grocery shopping, and performing some household chores. Tr. 32, 57-58, 244-245. Regarding social functioning, Plaintiff testified that he plays tennis, soccer, practices guitar, and sings Karaoke with two friends. Tr. 29, 31. Additionally, he has no trouble getting along with family, friends, coworkers, or authority figures. Tr. 58-59, 248-249. Plaintiff did testify that sometimes his "head is blank" and he is incapable of concentrating. Tr. 59. However, Dr. Brandmiller noted that Plaintiff was able to attend and sustain concentration and persist in completing tasks. Tr. 426. As such, the evidence of record does not support Plaintiff's assertion that he has "marked" limitations regarding activities of daily living, social functioning, or concentration, persistence, or pace.

Additionally, the evidence supports the ALJ's determination that Plaintiff had one to two episodes of decompensation, each of extended duration.[2] Plaintiff was hospitalized at Vista Health

---

[2] The term "repeated episodes of decompensation, each of extended duration, means three episodes in one year, or an average of once every four months, each lasting for more than two weeks. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

on two occasions: January 13,2009 through January 23, 2009; and June 8, 2009, through June 24, 2009. The record does not substantiate Plaintiff's claims that he suffered additional psychotic breaks of extended duration, nor does it support his assertion that even a minimal increase in mental demands would cause him to decompensate. As such, substantial evidence supports the ALJ's step-three analysis.

### B. RFC Assessment

Plaintiff contends the ALJ's RFC assessment did not properly reflect his mental limitations. *See* Pl.'s Br. 13-16. At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

Plaintiff argues that the ALJ should have adopted the Medical Source Statement completed by Ms. Collins-Simpson. On August 20, 2010, Ms. Collins-Simpson completed a Mental Medical Source Statement in which she assessed Plaintiff with a number of marked and serious limitations Tr. 454-457. She opined that Plaintiff "cannot maintain being symptom-free with environmental factors such as working or schooling." Tr. 457. Ms. Collins-Simpson also wrote a "To Whom It

May Concern" letter dated June 11, 2009, in which she opined that Plaintiff would not be able to maintain stable employment due to risk of another psychotic break. Tr. 239-240. On November 9, 2009, Ms. Collins-Simpson wrote another "To Whom It May Concern" letter in which she stated Plaintiff had been successfully maintained on an outpatient basis with the combination of therapy and medication, but could not balance the demands of working full-time *and* attending school without significant deterioration of his mental health. Tr. 291-292. She did note that Plaintiff appeared to be stabilized and had the ability to attend school without difficulty. Tr. 292.

Despite Plaintiff's contentions, Ms. Collins-Simpson is not a treating physician entitled to any special deference. A nurse practitioner is not considered an "acceptable medical source." An ALJ may consider evidence from "other sources" to show severity of a claimant's impairment(s) and how it affects his or her ability to work. 20 C.F.R. § 404.1513(d); *see Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006) (in considering the opinion evidence from an "other source," the ALJ was not bound by the treating source regulations and was permitted to consider any inconsistencies within the record). However, a medical source opinion that a claimant is disabled involves an issue reserved for the Commissioner and is not the type of medical opinion entitled to controlling weight. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

Ms. Collins-Simpson's Medical Source Statement and letters are inconsistent with her own treatment records, which show that Plaintiff's schizophrenia stabilized following his June 2009 hospitalization. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (an impairment that can be controlled by treatment or medication is not considered disabling). Following discharge, Ms. Collins-Simpson saw Plaintiff for medication management sessions seven times from September 2009 through September 2010. Tr. 398, 458-460, 462-464. In September 2009, Plaintiff was doing

well and Ms. Collins-Simpson recommended keeping his current medication regimen.  Tr. 398.  In January 2010, Plaintiff reported having some flashbacks, but denied psychosis.  Tr. 464.  Ms. Collins-Simpson opined that his mood changes could be due to the fact that he was bored, but unable to handle the demands of work and school.  Tr. 464.  In February 2010, Ms. Collins-Simpson added a new medication after Plaintiff reported problems sleeping and with his appetite.  Tr. 463.  In March 2010, Plaintiff reported he was compliant with his medications and was doing well, with no side effects or delusional thinking.  Tr. 462.  In fact, Plaintiff stated he eventually wanted to go back to school.  Tr. 462.  In May 2010, Plaintiff continued to do well without symptoms.  Tr. 460.  In July 2010, Plaintiff had slightly regressed and reported thoughts that it had been raining in his room.  Tr. 459.  As of September 2010, Ms. Collins-Simpson noted that Plaintiff's condition was the same and recommended staying on his current medication regimen.  Tr. 458.

It is notable that during the two-year period from January 2009, when his symptoms first appeared, through February 2011, when the ALJ issued his decision, Plaintiff required only two hospitalizations.  At the time of his first hospitalization, Plaintiff was a full-time student and was also working part-time.  Tr. 333.  Following discharge, Plaintiff's condition was stable and improved on medication.  Tr. 371-377.  By April 2009, Plaintiff was symptom-free and his prior psychotic episode was attributed to lack of sleep and playing video games for days at a time.  Tr. 376.  Plaintiff's subsequent hospitalization occurred only after he was tapered off of medication.  Tr. 378.  The evidence of record shows that Plaintiff's symptoms were largely controlled once his medication regimen was stabilized.

Substantial evidence also supports the ALJ's decision to afford great weight to Dr. Brandmiller's consultative evaluation, as it is more consistent with the evidence of record.  *Estes v.*

*Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (it is the ALJ's function to resolve conflicts of opinion among various treating and examining physicians). Dr. Brandmiller diagnosed Plaintiff with paranoid schizophrenia and assessed a Global Assessment Functioning ("GAF") score of 51 to 60, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV), 34 (4th ed. 2000). Dr. Brandmiller also noted that Plaintiff's impairment did not interfere with his day-to-day adaptive functioning. Tr. 425. Dr. Brandmiller determined Plaintiff was able to interact in a socially appropriate manner and communicate in a clear and effective manner. Tr. 425-426. She opined that Plaintiff appeared able to understand, remember, and carry out simple instructions, exhibited good performance on short term memory tasks, exhibited intact abstract thinking and long-term memory, was able to recall personal historical information without difficulty, and could perform basic math. Tr. 426. Dr. Brandmiller stated that Plaintiff was able to attend and sustain concentration, sustain persistence on completing tasks, and complete work-like tasks within an acceptable time frame. Tr. 426. Dr. Brandmiller's assessment is consistent with the evidence of record. As such, substantial evidence supports the ALJ's treatment of the opinion evidence.

After considering the evidence of record, including the medical records, opinion evidence, and Plaintiff's own statements as to his limitations, the undersigned finds that substantial evidence supports the ALJ's RFC determination.

    C.  <u>Vocational Expert Testimony</u>

Finally, Plaintiff contends the ALJ's hypothetical question did not fully account for his functional limitations. *See* Pl.'s Br. 19-20. A hypothetical question posed to the VE is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ. *Goff*

*v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)).  The ALJ may properly exclude, as he did in this case, any alleged limitation or impairments he rejects as untrue or unsubstantiated.  *Hunt*, 250 F.3d at 625.  Here, the ALJ's hypothetical to the VE was proper, as it mirrored the limitations ultimately adopted by the ALJ.  *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996).  For these reasons, substantial evidence supports the ALJ's step-five determination.

**V.     Conclusion**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed.  Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 12th day of February 2013.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE